Argued 27 February; decided 29 April, 1901.

## FRASIER *v.* NEW ZEALAND INSURANCE CO.

[64 Pac. 814.]

FIRE INSURANCE—WAIVER OF CONDITIONS IN POLICY.

Where plaintiff, as agent of defendant insurance company, issued a policy to himself, and, in excess of his authority, included a vacancy permit therein, and defendant, after learning the facts, canceled a part of the policy relating to goods not contained in the building for which the vacancy permit was issued, and returned the ratable portion of the premium therefor, but retained the rest of the premium for over four months, such action waived a condition of the policy providing that it should be void if the insured building was vacant for ten days, and hence plaintiff was entitled to recover on the policy, notwithstanding that the building was unoccupied and the vacancy permit was unauthorized and void: *Schmurr* v. *State Ins. Co.* 30 Or. 29, applied.

From Lane : JAMES W. HAMILTON, Judge.

This is an action by E. J. Frasier against the New Zealand Insurance Company on a policy of insurance against loss by fire. The plaintiff alleges, in substance, that on December 22, 1897, the defendant, a corporation, insured his household goods, while in a frame dwelling in Eugene, Oregon, and other personal property, against loss or damage by fire for the term of one year, the policy issued to him—being made a part of the complaint—stipulating that "this entire policy, unless otherwise provided by agreement indorsed hereon or added thereto, shall be void if  *  *  *  a building herein described

\* \* \*    be or become vacant or unoccupied and so remain for ten days," and having indorsed thereon a license as follows :

"Permission is hereby granted the assured to vacate the building containing the within described and insured property until February 1, 1898.    Granted December 22, 1897.

"E. J. Frasier, Agent."

On January 23, 1898, said building, while containing plaintiff's goods, was partially destroyed by fire, whereby he sustained damage in the sum of $1,795; and he gave immediate notice thereof to the defendant, and performed all the conditions imposed upon him by the contract of insurance, but it has not paid any part of the loss.    The answer denies, in effect, that the permit was indorsed on the policy until after the loss was sustained, or that the defendant had any knowledge that the said dwelling was unoccupied until after the fire occurred; and alleges that the plaintiff, on February 10, 1898, paid the premium, but it was received without knowledge that the dwelling was or had been unoccupied more than ten days continuously prior to the fire; that on March 5, 1898, defendant canceled said policy in respect to certain personal property not in the dwelling or injured by the fire, and returned a proportionate part of the premium therefor, and on June 16, 1898, having discovered that said dwelling was vacant at the time of the fire, and had been unoccupied more than ten days prior thereto, it tendered to the plaintiff the remainder of the premium, which he refused to accept, whereupon it deposited the same in court for him.    The reply denied the allegations of new matter in the answer, and averred that, as defendant's local agent, he issued the policy to himself, and on the same day indorsed thereon the vacancy permit, and immediately gave notice thereof to

the defendant, which made no objection thereto ; that
on February 10, 1898, the defendant had knowledge of
the vacancy of said building, and all the circumstances
preceding and attending the fire, on which day it received
the premium, and thereby waived the condition of the
policy, and ought now to be estopped to deny the same.
The trial of the cause resulting in a judgment for plaintiff in the sum of $1,700, the defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Lewis
B. Cox*, with an oral argument by *Mr. Wirt Minor*.

For respondent there was a brief and an oral argument
by *Messrs. Thompson & Hardy*.

MR. JUSTICE MOORE, after stating the facts, delivered
the opinion of the court.

The court instructed the jury, in effect, that if they
found that the defendant, after the fire, received the
premium, with knowledge that the dwelling containing
the insured goods had become vacant and remained unoccupied more than ten days continuously prior to the
loss, it thereby waived the condition of the policy, and
plaintiff was entitled to recover the amount of his loss ;
but if they should find that the defendant received the
premium in ignorance of the vacancy of the building, and
offered to return it as soon thereafter as it discovered
that the condition of the policy in that respect had been
violated, the defendant was entitled to a verdict.    An
exception having been taken to this portion of the charge,
it is necessary to state the substance of the testimony to
which it is applicable.    The plaintiff testified that on
December 22, 1897, as the defendant's local agent, he
issued to himself the policy in question, and mailed a

notice thereof to W. P. Thomas, the defendant's general manager in the United States at San Francisco; and on the same day, having concluded to go to California, he wrote the vacancy permit on the policy, prepared a memorandum thereof, which he inclosed in a postage-prepaid envelope addressed to Thomas, gave the letter to an acquaintance, and saw him deposit it in the United States post office at Eugene, whereupon he immediately went to California, whither his wife had preceded him, and they were visiting in that state when the fire occurred; and that Thomas never made any objection to the issuance of the permit until after the loss was sustained. The latter, however, testified that no notice of the vacancy permit was ever received by him until after the fire. If the jury believed that the letter notifying Thomas of the issuance of said permit was mailed as the plaintiff testified, they might have concluded that the general manager received it; for our statute provides that a letter duly directed and mailed is presumed to have been received in the regular course of the mail (Hill's Ann. Laws, § 776, subd. 24); and hence the jury could have found that the defendant at the time it received the premium had notice of the issuance of the vacancy permit.

From the correspondence between the parties it appears that the defendant was informed by the plaintiff about February 5, 1898, that the man who had charge of his property at Eugene prior to and at the time of the fire did not sleep in the house, but went there every night and morning to notice its condition. The plaintiff, on February 8, 1898, advised Thomas by letter that he had a written permit to vacate the house until February 1 of that year, and inclosed a draft for $16.83, the premium on his policy of insurance, less his commission; and two days thereafter the cashier of the defendant company mailed the plaintiff a receipt for the sum so paid, placing

it to the credit of the agency account, and at the same time Thomas informed him that no notice had ever been received of the permit to vacate the building, and requesting him to mail a copy thereof, upon receipt of which Thomas, on February 14, 1898, wrote to him again, notifying him that he disapproved the issuance of the permit. The defendant, on March 5, 1898, in pursuance of a stipulation of the policy, canceled that part of it relating to certain personal property not in the building, and sent the plaintiff a check for $4.10, the amount of the return premium, but retained the sum of $12.73 until June 16, 1898, when it was tendered to the plaintiff after this action was commenced. The defendant's theory is that, although it had knowledge when it received the premium that the building was vacant, and had been unoccupied more than ten days before the loss occurred, the money was accepted by it in consequence of the plaintiff's false representation that he had a vacancy permit; and that, while he could not issue to himself such a permit which would, without ratification, be binding upon the insurance company, it had other agents in this state who were invested with sufficient authority to grant such a license, and that, relying upon the validity of the permit, which could have been issued by such an agent, and upon said false representations, no waiver can be predicated upon the acceptance or retention of the premium. It will be remembered that the defendant, four days after receiving the premium, knew that the vacancy permit had been issued by the plaintiff, and, having kept the money four months and two days without having offered to return it, except the ratable proportion upon that part of the policy that was canceled, the question presented by the exceptions to the instruction complained of is whether, by the acceptance or the retention of the premium, the defendant thereby waived the condition of the policy.

It is evident that the condition rendering the policy void if the building containing the insured goods became vacant and remained unoccupied ten days was inserted for the benefit of the insurance company ; for it is reasonable to assume that, if the building were occupied, the occupants might be able to extinguish a fire or remove the goods therefrom, and thus mitigate threatened injury. Conditions prescribed by insurance companies for their benefit or protection can, of course, be waived by them at any time ; and, since forfeitures are deemed odious, courts are prompt to lay hold of circumstances that indicate an election to waive the conditions imposed : *Knickerbocker Life Ins. Co.* v. *Norton*, 96 U. S. 234 ; *Insurance Co.* v. *Eggleston*, 96 U. S. 572 ; *Hartford Life Ins. Co.* v. *Unsell*, 144 U. S. 439 (12 Sup. Ct. 671). In *Weidert* v. *State Ins. Co.* 19 Or. 261 (20 Am. St. Rep. 809, 24 Pac. 242), it was held that a waiver which would preclude an insurance company from relying upon the terms of its policy to defeat an action for the recovery of a loss sustained by a fire must be in the nature of an estoppel. In *Hollis* v. *Insurance Co.* 65 Iowa, 454 (21 N. W. 774), a more just rule, in our judgment, is announced by Mr. Justice REED, who, in speaking of the contention of an insurance company that acts sufficient to constitute a waiver of the conditions of its policy must be in the nature of an equitable estoppel, says : ''Its position is that, to constitute a waiver of the provisions of the policy providing for the forfeiture, the acts relied on must be attended with such equitable circumstances as would create an estoppel; and, as plaintiff was not induced by the acts in question to in any manner change his position with reference to the subject of the negotiation, and as the acts were done after the forfeiture occurred, they do not create an estoppel. We think, however, that this position is not tenable. The principle on which the waiver of a forfeiture

has been maintained in such cases is undoubtedly similar to that of estoppel. It was so held by this court in *Viele* v. *Germania Ins. Co.* 26 Iowa, 9. But we think it is not true that such waiver can be created only by such acts or conduct as would create a technical estoppel. Neither forfeitures nor estoppels are favored by the law, and it follows necessarily from this consideration that the waiver of a forfeiture may be sustained by circumstances which do not present the strong equities which would be required to create an estoppel. When plaintiff asserted a claim under the policy for the loss, and defendant was informed of the facts out of which the forfeiture grew, it had the right at once to treat the contract as at an end. If it had elected simply to remain silent, perhaps a waiver could not have been inferred from its silence ; but if, with knowledge of the circumstances, it continued to treat the contract as of binding force, and induced plaintiff to act in that belief, the rule holding that it thereby waived the forfeiture is a very just one."

In *Schmurr* v. *State Ins. Co.* 30 Or. 29 (46 Pac. 363), it was held that where an insurance company, after knowledge of facts that render void one of its policies, retains the premium, and fails to cancel the policy, it waives the forfeiture. In that case the contract of insurance provided that it should become null and void by the erection of an adjoining building within certain prohibited limits without the written consent of the insurance company. The policy was issued by a local agent, who delivered it to the assured before all the premium had been paid, and, an electric car barn having been built within the prohibited distance, the agent was informed thereof by the insured, who inquired the amount of additional premium required in consequence of the increased risk. The agent, with knowledge of the erection of the building, accepted the money due on the premium, wrote to the

company to ascertain the additional amount required on account of the augmented hazard, and upon receipt of its answer notified the assured thereof. But the latter never made any further payments, nor was the policy canceled. A short time thereafter the property insured was burned, and it was held that the conditions of the policy were waived. In *Milkman* v. *United Mut. Ins. Co.* 20 R. I. 10 (36 Atl. 1121), the plaintiff's goods in a store were insured by the defendant under a policy wherein it was stipulated that the plaintiff would maintain "the automatic sprinkler equipments now in use in full working order during the continuance of the policy." The plaintiff never complied with this requirement, and, the goods having been destroyed by fire, the insurance company accepted the premium after the loss, and with knowledge of the fact that there were no sprinklers in the store. In that case the defendant's counsel conceded that the rule contended for by the plaintiff herein applied to the provisions of a policy relating to its forfeiture for nonpayment of the premium, but denied its application to other cases of forfeiture, and also to the receipt of the premium after loss. Mr. Justice STINESS speaking for the court in deciding the case, says : "We see no sufficient reason for a distinction either in the case of forfeiture or the time of the waiver. It is just as consistent for a company to take the premium after it knows of a breach of one condition, and then say that the policy is void, as it is to do so for breach of another condition, and equally so after or before a loss." In *Continental Ins. Co.* v. *Chew*, 11 Ind. App. 330 (54 Am. St. Rep. 506, 38 N. E. 417), in consideration of a premium payable in installments, a policy was issued which contained a stipulation to the effect that the insurance company should not be liable for any loss occurring while any part of the premium remained overdue and unpaid. A loss having

been sustained during a breach of such condition, the insurance company, with full knowledge thereof, accepted the premium ; and it was held that the condition of the policy was thereby waived.  Mr. Justice GAVIN, speaking for the court in deciding the case, says : "Although the company has a right to rely upon such default by the insured as a defense, if it, with knowledge of a loss, accepts the premium, it thereby waives the forfeiture, and restores the policy to its full force and effect.  Such acceptance does not simply revive the policy as to the future, but it thereby restores to it its power and force from the beginning."

The rule is well settled that if an insurer voluntarily accepts or compulsorily collects a premium after knowledge of a breach of a condition in its policy which annuls it upon election, or retains an unearned premium after such knowledge, though it was received in ignorance thereof, it thereby waives the right to invoke the breach as a defense to an action by the insured on the policy to recover the indemnity provided for by the contract of insurance : 16 Am. & Eng. Ency. Law (2 ed.), 940.  Thus, in *Reaper City Ins. Co.* v. *Jones*, 62 Ill. 458, the premium having been paid, a policy of insurance was issued containing a clause that it should be void if gunpowder was kept in a certain building without written permission.  The assured sustained a loss, and it appeared that at the time of the fire he had in the building a few pounds of the prohibited article, which he kept with the knowledge and express permission of an agent of the insurer, but the license was not evidenced by any written agreement; and it was held that the company, having accepted the premium with the knowledge that such explosive was kept in the building, thereby waived the condition of the policy.  Mr. Justice THORNTON, speaking for the court in deciding the case, says : "With a

full knowledge of all the facts, the company takes the
money of the assured with the determination at the time
to resist the payment of loss should any occur.    This
was not only a fraud, but a deceit, which the law can
never sanction.    The defense set up is destitute even of
the semblance of justice." In *Commercial Ins. Co.* v.
*Spankneble*, 52 Ill. 53 (4 Am. Rep. 582), it was held that,
to permit an insurance company to receive a premium
when it knew the policy was not binding, and which it
never intended to pay, would amount to a fraud.    Thus,
in *Osterloh* v. *Insurance Co.* 60 Wis. 126 (18 N. W. 749),
it appeared that, after the notice of a breach of the con-
ditions avoiding a contract of insurance, officers of a
mutual insurance company failed to cancel the policy,
and subsequently made an assessment upon the stock of
the insured in the company, which was collected on
account of the policy ; and it was held that the condition
was waived.    In *Phœnix Ins. Co.* v. *Tomlinson*, 125 Ind.
84 (21 Am. St. Rep. 203, 25 N. E. 126, 9 L. R. A. 317),
a policy of insurance issued in consideration of the exe-
cution of a promissory note as a part payment of the
premium contained a stipulation to the effect that, if
default were made in the payment of the note, the policy
should cease to be of force during the time the note
remained unpaid after its maturity.    The note not hav-
ing been paid, a judgment was recovered against the
insured for the amount thereof, whereupon he pro-
cured a stay of execution, at the expiration of which he
paid the judgment, but after the insured property was
destroyed by fire ; and it was held that the right to
declare a forfeiture was thereby waived.

So, too, in *Schreiber* v. *Insurance Co.* 43 Minn. 367 (45
N. W. 708), policies were issued which provided that they
should be null and void in case any of the representations

or statements made in the written applications therefor were untrue. The insured represented in his applications for insurance that the land, upon which a crop of grain was growing that formed the subject of insurance, was free from incumbrance, whereas it was subject to mortgages and liens. A loss of the grain by hail having occurred, the company thereafter took judgment against the plaintiff upon the unpaid premium notes, and collected by execution the sum so found to be due thereon ; and it was held that, although the payment was thus enforced, if it was done without notice of the breach of the condition, and on the assumption that the policies were valid, it would not amount to a waiver ; yet the retention of the money after knowledge of the false representations in the application for insurance waived the condition of the policy, and that, after learning of the breach, the company could not elect to avoid the policy without returning, or offering to return, the money so collected. In the case at bar the evidence does not show that the insurance company took any active part in the collection of the premium, and may have received it in ignorance of the breach of the condition relied upon ; but thereafter, with knowledge of all the facts, it canceled the policy in respect to the property not contained in the dwelling and not injured by the fire, and returned a proportionate part of the premium therefor. By this act it signified its assent to the validity of the policy, including the waiver indorsed thereon, of which it had notice, and retained the remainder of the premium until after this action was commenced, which the court was justified in saying, as a matter of law, it kept an unreasonable time, thus further signifying its intention to abide by the terms of the contract ; and, having done so, as the jury found, it thereby waived the condition of the policy. The in-

structions complained of being proper and decisive, it is unnecessary to consider other exceptions insisted upon by defendant's counsel. It follows that the judgment is affirmed.                                           AFFIRMED.

<div align="center">

Decided 3 June, 1901.