Argued 24 July; decided 18 August, 1902.

## STRINGHAM *v.* DILLON.

[69 Pac. 1020.]

CHANGING BENEFICIARY OF FRATERNAL INSURANCE—EFFECT OF BY-LAWS.

A member of a fraternal mutual insurance society cannot change the beneficiary in the policy except by complying with the rules and by-laws of the order ; thus, where a member of a fraternal beneficiary society held a certificate payable at his death to his mother ; and the by-laws of the society provided that a member could change his beneficiary at any time in a prescribed manner, and on payment of a certain fee, but that no change "shall be effective until the old certificate shall have been delivered to the head clerk, and a new certificate issued during the lifetime of the member, and until such time the old certificate shall remain in force ;" and the member took the prescribed steps to substitute his wife as a beneficiary, except the payment of the fee, and left his certificate with the clerk of the local camp to be forwarded, but did not pay the prescribed fee, though told that it was required, and after his death the clerk forwarded the certificate to the head clerk, advancing the fee himself without.any request so to do, the desired change was not accomplished, and the insurance belonged to the original beneficiary.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This is a suit by Maud M. Stringham against Laura Dillon and the Modern Woodmen of America to determine the right of adverse claimants to a sum of money due on account of a certificate of mutual life insurance. The facts are that the Modern Woodmen of America is a corporation organized under the laws of the State of Illinois for the purpose, among others, of creating a fund from which is drawn a stipulated sum upon the death of a qualified member, payable to his beneficiary; that said corporation has a head camp at Rock Island, Ill., and local camps at other places in the states and territories, including one at Portland, Oregon, known as "Oregon Fir Camp, No. 5,085." Le Roy Stringham, on January 31, 1899, having applied for admission to said local camp, there was issued to him by said corporation benefit certificate No. 495,341, for the sum of $2,000, payable, in the event of his death while a member in good standing, to his mother, the defendant Laura Dillon. This certificate contained, among other clauses, the following: "*Provided, however,* that all the conditions contained in this certificate and the by-laws of this society as the same now exist or may be hereafter modified or enacted shall be fully complied with." The by-laws of said society adopted in

June, 1897, and in force at the time Stringham became a member thereof, so far as material herein, contained the following: "Sec. 43. *Change in Beneficiaries.* If a member in good standing at any time desires a change in the name of his beneficiary or beneficiaries, he shall pay to the camp clerk a fee of fifty cents, and deliver to him his benefit certificate, with the surrender clause on the back thereof duly filled out and executed by him, designating therein the change desired in the name of the beneficiary or beneficiaries. The execution of such surrender clause by the neighbor shall be in the presence of, and attested by, his camp clerk. * * The local clerk shall forward said certificate with said surrender clause indorsed thereon, and one half of said fee of fifty cents, to the head clerk, who shall thereupon issue a new benefit certificate payable to the beneficiary or beneficiaries named in the surrender clause. * * No change in the designation of the beneficiaries shall be of binding force unless made in compliance with this section." In June, 1899, said section was re-enacted by the society as section 41 of its by-laws, with the following amendment as a modification thereof, to wit: "No change in the beneficiaries shall be effective until the delivery of the new certificate, and until such time the old certificate shall be held in force." This section was further amended and modified July 15, 1901, as follows: "No change in the designation of beneficiary or beneficiaries shall be effective until the old certificate shall have been delivered to the head clerk and a new certificate issued during the lifetime of the member, and until such time the old certificate shall remain in full force." Stringham and plaintiff were married May 19, 1901, and three days thereafter, at a regular meeting of Oregon Fir Camp, No. 5,085, at his request, the clerk thereof wrote her name in the surrender clause on the back of his certificate and he subscribed his name thereto. The clerk attested his signature, and informed him that a fee of fifty cents was prescribed for securing a change of a beneficiary, to which he replied, "I am not prepared to pay that to-night; will next Wednesday do?" The clerk answered, "Yes, that will do all right;" and the benefit certificate was

left with him, but Stringham never paid the fee, and, having died July 28, 1901, the clerk on the following day voluntarily advanced twenty-five cents, which he sent with said certificate to the head clerk. The complaint, having set out in part the facts as hereinbefore stated, alleged that Stringham complied with all the rules and regulations of the order necessary to effect a change in his beneficiary; that at the time of his death he was a member in good standing in said corporation; that plaintiff within the time prescribed made due proof of his death, but that the defendant the Modern Woodmen of America declined to pay her the sum so stipulated; and that the defendant Laura Dillon claims some interest therein, but such claim is inferior to hers; and prays that said corporation be required to pay the sum of $2,000 to plaintiff, and that Mrs. Dillon be decreed to have no right to any part thereof. The corporation, admitting that it owed the sum demanded, but that it was unable to determine which party was entitled thereto, filed a bill of interpleader, and, having paid said sum into court, was discharged from all liability on account of said claims. The defendant Laura Dillon, answering, admitted that the Modern Woodmen of America was duly incorporated, and that her son Le Roy Stringham died a member thereof in good standing, and, having denied the other material allegations of the complaint, averred as a separate defense that he did not pay the sum of fifty cents necessary to secure a change in his beneficiary; that, according to the by-laws of said order, no such change could be made until his old certificate had been delivered to the head clerk and a new one issued to him; and that, none of these requirements having been complied with, she was his beneficiary, and entitled to the money so deposited. The reply, having denied the allegations of new matter in the answer, averred that the payment of fifty cents required to secure a change in the beneficiary was waived, notwithstanding which said sum was paid as alleged in the complaint. For a further reply it is alleged that the change in said by-laws in June, 1899, after said certificate was issued, is indefinite and unreasonable; that the change made therein in July, 1901,

42 OR.—5

after Stringham had surrendered his certificate to, and it had been accepted by, the clerk of his camp, is unreasonable, and contrary to the purposes, objects, and intents of said order; and that such changes are void as to said certificate. A trial, being had, resulted in a decree awarding the sum so deposited to the defendant Laura Dillon, and plaintiff appeals.

AFFIRMED.

For appellant there was an oral argument by *Mr. George A. Brodie,* with a brief over the names of *Emmons & Emmons* and *George A. Brodie,* to this effect:

I. It is well settled that the constitution and by-laws of a mutual insurance society in existence at the time of issuing its policy of insurance are part of the contract as much and to the same effect as if expressly written in the policy: *Wendt* v. *Legion of Honor,* 72 Iowa, 684 (34 N. W. 470); *Shuman* v. *A. O. U. W.* 110 Iowa, 642 (82 N. W. 331); *Independent Foresters* v. *Keliher,* 36 Or. 501 (78 Am. St. Rep. 785, 59 Pac. 324, 1109).

II. It is claimed by counsel for respondent that the promise of Le Roy Stringham, when he became a member of the Modern Woodmen of America, to obey the laws of the order then in force, or which might thereafter be enacted, was a consent on his part to the change in the by-laws above specified; but the authorities all hold that such a promise does not have that effect: 3 Am. & Eng. Enc. Law (2 ed.), 1064; Niblack, Ben. Soc. (2 ed.), §§ 10, 20, 25, 26; *Wist* v. *Grand Lodge,* 22 Or. 271 (29 Am. St. Rep. 603, 29 Pac. 610); *Knights Templar Indem. Co.* v. *Jarman,* 104 Fed. 638; *Smith* v. *Supreme Lodge K. P.* 83 Mo. App. 512; *Peterson* v. *Gibson,* 191 Ill. 365 (54 L. R. A. 836 and note, 85 Am. St. Rep. 263 and note, 61 N. E. 127); *Grand Lodge* v. *Stumpf,* 24 Tex. Civ. App. 309 (58 S. W. 840); *Langan* v. *American L. of H.* 70 N. Y. Supp. 663; *Bragaw* v. *Grand Lodge,* 128 N. C. 354 (38 S. E. 905, 54 L. R. A. 602 and note).

III. As to changing the beneficiary we cite the following: Niblack, Ben. Soc. (2 ed.) § 25; Bacon, Ben. Soc. Vol. I, §§ 308-

310b; Vol. II, § 431; *Independent Foresters* v. *Keliher*, 36 Or. 501 (78 Am. St. Rep. 785, 59 Pac. 324, 1109); *Rollins* v. *McHatton*, 16 Colo. 207, 208 (25 Am. St. Rep. 260 and note, 27 Pac. 254); *Harman* v. *Lewis*, 24 Fed. 97, 530; *Luhrs* v. *Luhrs*, 123 N. Y. 367 (25 N. E. 388, 20 Am. St. Rep. 754, 9 L. R. A. 534); *National Mut. Aid Soc.* v. *Leopold*, 101 Pa. St. 118; *Shuman* v. *A. O. U. W.* 110 Iowa, 642 (82 N. W. 331); *Modern Woodmen* v. *Little*, 114 Iowa, 109 (86 N. W. 216); *Splawn* v. *Chew*, 60 Tex. 532; *Manning* v. *A. O. U. W.* 86 Ky. 136 (9 Am. St. Rep. 270, 5 S. W. 385); *Ireland* v. *Ireland*, 42 Hun, 212; *Ballou* v. *Gile*, 50 Wis. 619; *Supreme Lodge K. of P.* v. *Schneider*, 98 Ind. 381; *Grand Lodge* v. *Child*, 70 Mich. 163 (38 N. W. 1).

For respondent there was an oral argument by *Mr. Oglesby Young*, with a brief over the names of *Oglesby Young* and *William T. Vaughn*, to this effect:

I. The power of a fraternal insurance society to alter, amend or repeal its by-laws is implied from its general power to enact by-laws, unless specially restricted: 3 Am. & Eng. Enc. Law (2 ed.), 1064; *Wist* v. *Grand Lodge*, 22 Or. 271 (29 Am. St. Rep. 603, 29 Pac. 610); *Peterson* v. *Gibson*, 191 Ill. 365, 367 (54 L. R. A. 836 and note, 85 Am. St. Rep. 263 and note, 61 N. E. 127); *Supreme Lodge K. of P.* v. *Knight*, 117 Ind. 492 (3 L. R. A. 409, 20 N. E. 479). See, also, *Robinson* v. *Templar Lodge*, 117 Cal. 370 (59 Am. St. Rep. 193, 49 Pac. 170); *Montgomery C. F. M. Ins. Co.* v. *Milner*, 90 Iowa, 685 (57 N. W. 612).

II. The right of a member of a fraternal insurance society to change the beneficiary named in his certificate, arises, not from the character of the society, but from the terms of the contract between the society and the member, and a change cannot be effected unless the mode prescribed is substantially followed: *Modern Woodmen* v. *Little*, 114 Iowa, 109 (86 N. W. 216); *Independent Foresters* v. *Keliher*, 36 Or. 501 (78 Am. St. Rep. 785, 59 Pac. 324, 1109); *Wendt* v. *Legion of Honor*, 72 Iowa, 683 (34 N. W. 470); *Stephenson* v. *Stephen-*

*son,* 64 Iowa, 534; *McLaughlin* v. *McLaughlin,* 104 Cal. 171 (43 Am. St. Rep. 83, 37 Pac. 865):

Mr. Chief Justice Moore, after stating the facts, delivered the opinion of the court.

It is contended by plaintiff's counsel that the failure of Stringham to pay the fee prescribed to secure a change of his beneficiary does not defeat the right of his widow to recover the sum specified in his benefit certificate, and that the amendments made by the order to its by-laws after he became a member thereof are unreasonable and contrary to its purposes. It is argued that the payment of the fee is not a condition precedent to the right to change a beneficiary, and that the acceptance of the money therefor by the order after Stringham's death, with knowledge thereof, waived any informality in the manner of securing such change, and that, notwithstanding the right to modify the by-laws was reserved by the order, the adoption of the amendments and modifications thereof after Stringham became a member placed it beyond his power to comply literally with the regulations, and that for these reasons the court erred in not decreeing to plaintiff the money due under the policy.

It will be remembered that the prescribed fee was not paid, nor was Stringham's old certificate delivered to the head clerk, or a new one issued, in the lifetime of the deceased, as required by the amended by-laws. To justify a reversal of the decree, it would be necessary, therefore, to uphold both points for which plaintiff's counsel contend. If it should be determined, however, that the payment of the fee was a condition precedent to the right to change a beneficiary, it would be unnecessary to consider whether the amendment of the by-laws after Stringham became a member of the order was prejudicial to the rights of either party.

As a matter preliminary to the principal inquiry, it is deemed proper to consider whether the acceptance of the sum of twenty-five cents by the order after Stringham's death waived, so far as plaintiff (Maud Stringham) is concerned, any

defect in the manner of changing the beneficiary. The testimony fails to show that the corporation had any notice of his death when it received the money; but, conceding that it possessed such information, the acceptance of a part of the fee, under the circumstances assumed, could not in any manner change the rights or prejudice the interests of Stringham's widow or of his mother, which, as between them, became vested at his death. It is possible that, by accepting and retaining the payment of a delinquent assessment with knowledge of all the facts constituting a breach of duty imposed upon an insured, the insurer might waive the right to declare a forfeiture of the contract of indemnity, thereby rendering itself liable thereon (*Frazier* v. *New Zealand Ins. Co.* 39 Or. 342, 64 Pac. 814; *Lord* v. *National Protec. Soc.* —— Mich. ——, 88 N. W. 876) ; but, even if the determination of the order were clearly manifest, it would not be binding upon the courts, when conflicting claims to any part of the fund collected by it from its members are involved.

When Stringham, after designating his wife as his beneficiary in the surrender clause, left his benefit certificate with the clerk of Oregon Fir Camp, No. 5,085, he did not request nor did the latter promise to advance the fee necessary to secure the change desired, and hence the neglect to pay the sum required for the purpose indicated was attributable to his fault, and not to the carelessness of the clerk of the local camp. It is true the clerk, the day after Stringham's death, advanced twenty-five cents, and sent it with the benefit certificate to the head clerk; but, no request therefor having been made by Stringham, such post-mortem payment could not revive a right that had never been initiated, if the payment of the fee be a condition precedent to a change of beneficiary.

The rule is quite well settled that the person named in a certificate of a mutual benefit association as the recipient of its bounty has no vested interest in the fund to be distributed until the happening of the contingency insured against, but only an expectancy, which may be defeated by the member to whom the certificate is issued changing the beneficiary: *Inde-*

*pendent Foresters* v. *Keliher,* 36 Or. 501 (59 Pac. 1109, 60 Pac. 563, 78 Am. St. Rep. 785.) "But," as was said by Mr. Justice BEAN in that case, "it is equally as well settled that such power must be executed in the manner pointed out by the policy and the by-laws and rules of the order, and any material deviation from the course prescribed will invalidate the transfer." Where, however, the member has performed the part required of him to perfect the substitution, according to the mode prescribed, but, owing to circumstances over which he had no control, the change is not fully effectuated at the time of his death, a court of equity will occasionally aid the defective execution of the power attempted to be exercised: Bacon, Ben. Soc. §§ 309, 310. Stringham complied with all the requirements imposed upon him by the rules of the order necessary to substitute his wife as beneficiary, except to pay the fee prescribed. At the time he executed the surrender clause the clerk informed him that the payment of fifty cents was required to secure such change, and, having inquired if the payment of this sum could be deferred until the next meeting of the society, he knew that he had not fully performed on his part all the conditions necessary to effectuate a substitution according to the method prescribed. If, owing to circumstances over which Stringham had no control, the substitution was not entirely consummated at the time of his death, and he had, by the prescribed method, done all acts required of him therefor, the court might treat the commutation as complete; but since he did not perform on his part all the acts required of him by the rules of the order, and as the failure in this respect was not owing to circumstances beyond his control, a court of equity can grant no relief, for the payment of the fee prescribed was the consideration for the transfer, which the rules of the order demanded should be made in advance, thereby rendering its payment a condition precedent to the substitution. Stringham having failed to comply therewith, his widow has no legal right to the fund deposited in court, and hence the decree is affirmed.

AFFIRMED.